IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| ALLSTATE INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:17-cv-04169-NKL |
| STUART HEAD, | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is plaintiff Allstate Insurance Company's motion for partial summary judgment, Doc. 55. Allstate argues that the undisputed, material facts show that Mr. Head breached the Exclusive Agency Agreement and misappropriated Allstate's trade secrets. Allstate seeks summary judgment on the issue of liability only.

For the following reasons, Allstate's motion is denied.

### I. Statement of Uncontroverted Material Facts[1]

Mr. Head executed an Exclusive Agency Agreement between Allstate Insurance Company

---

[1] The statement of uncontroverted material fact is taken from Plaintiff's statement of uncontroverted material facts in its memorandum in support of motion for partial summary judgment. Doc. 56, pp. 3–9. The Court cites to the record directly, rather than the statement itself.

Pursuant to Local Rule 56.1, "[u]nless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment." *See Jones v. United Parcel Service, Inc.*, 461 F.3d 982, 991 (8th Cir. 2006) (affirming district court's discretion under W.D. Mo. R. 56.1); *see also* Fed. R. Civ. P. 56(e)(2). Mr. Head did not respond to Allstate's statement of facts in support of its motion for partial summary judgment. Accordingly, all admissible facts asserted by Allstate are deemed admitted by Mr. Head.

However, in ruling on Allstate's motion for partial summary judgment, the Court does not consider inadmissible evidence. "In evaluating the evidence at the summary judgment stage, [the Court] consider[s] only those responses that are supported by admissible evidence." *Duluth News-*

and Head Brothers Agency, LLC (HBA) dated May 1, 2015. Doc. 56-1 (Exclusive Agency Agreement), p. 1. Mr. Head signed the Exclusive Agency Agreement twice—once on behalf of HBA and once as a "Key Person." *Id.* (Exclusive Agency Agreement) at p. 13; Doc. 56-2 (Head Deposition), pp. 32–33. The Exclusive Agency Agreement states,

> For a period of one year following termination, neither [HBA], nor any of its officers, directors, shareholders, members, or employees, including Key Person or any other persons working in connection with this Agreement, will solicit the purchase of products or services in competition with those sold by [Allstate]:
> [] With respect to any person, company, or organization to whom [HBA] or anyone acting on its behalf sold insurance or other products or services on behalf of [Allstate] and who is a customer of [Allstate] at the time of termination of the [Exclusive Agency] Agreement;
> [] With respect to any person, company, or organization who is a customer of [Allstate] at the time of termination of [the Exclusive Agency] Agreement and whose identity was discovered as a result of [HBA's] status as [an Allstate] agent or as a result of [HBA's] access to confidential information of [Allstate]; or
> [] From any office or business site located within one mile of the agency sales location maintained pursuant to [the Exclusive Agency Agreement] at the time of [the Exclusive Agency Agreement] is terminated.

Doc. 56-1 (Exclusive Agency Agreement), at § XVIII(D). Mr. Head stated that he understood this non-compete provision in the Exclusive Agency Agreement. Doc. 56-2 (Head Deposition), p. 52.

Mr. Head also signed a Key Person Agreement—once as "Key Person as an Individual" and once on behalf of HBA—that was attached as Appendix A to the Exclusive Agency

---

*Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996). Further, "[a]n affidavit . . . must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4); *see also Ward v. Int'l Paper Co.*, 509 F.3d 457, 462 (8th Cir. 2007) (holding that statements in affidavits for which affiants lacked personal knowledge were properly excluded).

Specifically, the Court does not rely on statements in Mr. Swartz's affidavit that pertain to what Allstate customers have told either Mr. Swartz or other agents at Mr. Swartz's insurance agency be. Nor does the Court rely on Allstate's verified complaint as an affidavit. Although a "verified complaint is the equivalent of an affidavit for the purpose of summary judgment," *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992), Allstate has not shown that the statements were made on personal knowledge and would be admissible in evidence, or that the affiant is competent to testify.

Agreement. Doc. 56-1 (Appendix A), p. 15. The Key Person Agreement is between Stuart Head and HBA, and lists Allstate as a direct third party beneficiary. *Id.* (Appendix A) at p. 14. In the Key Person Agreement, Mr. Head personally agreed not to "either directly or indirectly, solicit, sell or service insurance of any kind for any other company, agent or broker, or refer a prospect to another company, agent or broker without the prior written consent of [Allstate]" while employed by HBA. *Id.* (Appendix A) at ¶ 9.

> Mr. Head also agreed not to
>
> at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information, except upon the written consent of [Allstate]; nor . . . use any confidential information for [his] own benefit, except for the purposes of assisting [HBA] in performing services under the [exclusive] agency agreement.

*Id.* (Appendix A) at ¶ 4. Further, Mr. Head agreed that "all [Allstate] forms, manuals, records, and other materials and supplies furnished to [Mr. Head] by [HBA] will at all times remain the property of [Allstate] and will be returned to [Allstate] at any time upon the demand of [Allstate] or upon the termination of [Mr. Head's] employment with [HBA]." *Id.* (Appendix A) at ¶ 5. Mr. Head acknowledged that if a competitor gained access to the type of information Allstate shared based on his status as a Key Person, the information could be used to sell competing products or services at a lower price, harming Allstate's business. Doc. 56-2 (Head Deposition), pp. 47–48.

Finally, the Key Person Agreement provides that "if requested by [Allstate], [Mr. Head] will execute an Order of Transfer of Responsibility for any telephone numbers in [his] name, which were used in connection with the conduct of business on behalf of [Allstate]." Doc. 56-1 (Appendix A) at ¶ 8.

On May 1, 2017, Allstate sent a letter concerning the termination of the Exclusive Agency Agreement. Doc. 56-3 (Termination Letters). The letter notified Mr. Head that the Exclusive Agency Agreement would terminate in 90 days—on or about July 31, 2017—and Mr. Head had

to immediately return of all property belonging to Allstate and cease using any telephone numbers used to conduct Allstate business. *Id.* at 1; Doc. 56-2 (Head Deposition), pp. 55–57, 68–69.

By June 5, 2017, Mr. Head had started a new insurance agency, Head Brothers Insurance Group (HBIG), to sell insurance for an independent agency group, Global Green Insurance Group. Doc. 56-2 (Head Deposition), pp. 64–69, 76; Doc. 56-4 (License Affiliations). HBA continued to issue new Allstate insurance through June 2017. Doc. 56-2 (Head Deposition), pp. 111–12; Doc. 56-5 (HBA Business Metrics). Mr. Head had access to Allstate's confidential information through July 31, 2017. Doc. 56-2 (Head Deposition), p. 85.

Samantha Lange, an employee of HBA, continued to sell Allstate insurance through June 2017, by which time she was also affiliated with HBIG. Doc. 56-2 (Head Deposition), p. 110–12; Doc. 56-4 (License Affiliations), p. 2. By August 15, 2018, Ms. Lange had sold insurance on behalf of HBIG to at least one person who had been a customer of Allstate. Doc. 56-6 (Lange Deposition), pp. 49–50; Doc. 56-7 (Anderson Insurance Card).

The majority of the Allstate book of business previously serviced by HBA was transferred on or around August 1, 2017 to another Allstate Exclusive Agency run by Renee Swartz. Doc. 56-8 (Swartz Affidavit), ¶ 7. The Swartz Agency lost approximately 16 customers from the book of business in August 2017. *Id.* at ¶ 17.

On September 11, 2017, Allstate sued Mr. Head in federal court for violating the Exclusive Agency Agreement. Doc. 1 (Verified Complaint). The Verified Complaint alleges that Mr. Head breached the Exclusive Agency Agreement by

> operating a competing insurance business while still an Allstate Exclusive Agent; [] failing to return Allstate confidential and proprietary information; [] continuing to use Allstate telephone number(s) previously associated with [Mr. Head's] Allstate Exclusive Agency; [] misusing Allstate confidential information to solicit Allstate customers to his competing insurance agency; and [] soliciting Allstate customers during [Mr. Head's] one year non-solicitation period.

Doc. 1 (Verified Complaint), ¶ 79. Additionally, Allstate alleges that Mr. Head misappropriated trade secrets, as defined by Mo. Rev. St. § 417.450 *et seq.* and 18 U.S.C. § 1832 *et seq.*, by using Allstate's trade secrets without its consent. Doc. 1 (Verified Complaint), ¶¶ 88, 93, 94, 104, 105.

## II. Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D &M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010); Fed. R. Civ. P. 56(a). The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not appropriate when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

A. <u>Breach of Contract</u>

Allstate alleges the following breaches of contract: (1) operating a competing insurance business while under contract with Allstate; (2) failing to return Allstate confidential information; (3) continuing to use the telephone number previously associated with HBA; (4) misusing Allstate's confidential information to solicit Allstate customers to HBIG; and (5) soliciting Allstate customers during the non-solicitation period. Doc. 1 (Verified Complaint), ¶ 79. Each basis for breach of contract is addressed separately.

> 1. *Operating a Competing Insurance Business While Still an Allstate Exclusive Agent*

The Key Person Agreement prohibits Mr. Head from "either directly or indirectly, solicit[ing], sell[ing] or servic[ing] insurance of any kind for any other company, agent or broker, or refer[ing] a prospect to another company, agent or broker" while employed by HBA. Doc. 56-1 (Appendix A), ¶ 9. As evidence that Mr. Head violated this provision, Allstate has established that 1) Mr. Head was affiliated with Allstate and HBA through July 31, 2017, Doc. 56-2 (Head Deposition), pp. 84–85; 2) Mr. Head created HBIG in June 2017, prior to the termination of the Exclusive Agency Agreement, Doc. 56-2 (Head Deposition), pp. 64–69; Doc. 56-4 (License Affiliations); and 3) HBIG sold insurance to at least one former Allstate customer as early as August 15, 2017, Doc. 56-2 (Head Deposition), pp. 115–16; Doc. 56-7 (Anderson Insurance Card).

These facts do not establish as a matter of law that prior to July 31, 2017, Mr. Head either directly solicited, sold or serviced insurance on behalf of HBIG, or indirectly did so by directing an employee of HBIG to solicit, sell or service competing insurance. At best, they may create an inference that Mr. Head breached this provision. Summary judgment is denied as to this provision.

*2. Failing to Return Allstate Confidential and Proprietary Information*

The Key Person Agreement provides that "[a]ny and all confidential information . . . will be returned to [Allstate] at any time upon the demand of [Allstate] or the termination of [Mr. Head's] employment by [HBA]." Doc. 56-1 (Appendix A), ¶ 5. Allstate has produced a letter directing HBA and Mr. Head to return confidential information to Allstate. Doc. 56-3 (Termination Letters). To support a finding that Mr. Head retained Allstate's confidential information, Allstate presented evidence that 1) Mr. Head had access to Allstate's confidential databases and systems at the same time that he created HBIG, Doc. 56-2 (Head Deposition), pp. 64–69, 85; Doc. 56-4 (License Affiliations); 2) HBIG sold insurance to at least one Allstate customer soon after the Exclusive Agency Agreement terminated, Doc. 56-2 (Head Deposition),

6

pp. 115–16; Doc. 56-7 (Anderson Insurance Card); and 3) Mr. Swartz's statement that his agency had lost approximately 16 customers as of August 30, 2017, Doc. 56-8 (Swartz Affidavit), ¶ 17.

These facts do not establish as a matter of law that Mr. Head failed to return confidential information to Allstate. There is not even an affidavit from an Allstate representative that states Allstate did not receive the confidential information described in the summary judgment motion. Accordingly, summary judgment on this issue is denied.

### 3. *Continuing to Use Allstate's Telephone Number*

The Key Person Agreement provides that "[i]f requested by [Allstate], [Mr. Head] will execute an Order of Transfer of Responsibility for any telephone numbers in [his] name, which were used in connection with the conduct of business on behalf of [Allstate]." Doc. 56-1 (Appendix A), ¶ 8. Allstate has established that Mr. Head received a notice from Allstate requesting that Mr. Head cease using any telephone numbers used to conduct Allstate business, Doc. 56-3 (Termination Letters), but Allstate has not established that Mr. Head conducted business from telephone numbers in his own name. Therefore, summary judgment on this issue is denied.

### 4. *Misusing Confidential Information*

Mr. Head agreed not to "use any confidential information for [his] own benefit except for the purposes of assisting [HBA] in performing services under the agency agreement." Doc. 56-1 (Appendix A), ¶ 4. To show Mr. Head breached this provision, Allstate points to the undisputed facts that 1) Mr. Head personally had access to Allstate's confidential information while operating HBIG, Doc. 56-2 (Head Deposition), pp. 64–69, 85; Doc. 56-4 (License Affiliations); 2) customers switched insurance providers quickly after HBA stopped selling Allstate insurance, Doc. 56-7 (Anderson Insurance Card); and 3) Mr. Swartz's statement that his agency has lost approximately 16 customers, Doc. 56-8 (Swartz Affidavit), ¶ 17. Although these facts may permit a jury to conclude that Mr. Head used Allstate's customer lists to solicit customers on behalf of HBIG, they

7

do not show as a matter of law that this did occur. At best, Allstate has created a permissible inference that Mr. Head breached this provision of the contract. Accordingly, summary judgment on this allegation is denied.

     5. *Violating the Non-Solicitation Clause*

The Exclusive Agency Agreement prohibits Mr. Head from soliciting the purchase of products and services in competition with those sold by Allstate from Allstate customers or from an office within one mile of HBA's location following the termination of the Exclusive Agency Agreement. Doc. 56-1 (Exclusive Agency Agreement), § XVIII. As evidence that Mr. Head breached this provision, Allstate produced 1) evidence that the Exclusive Agency Agreement was terminated July 31, 2017, Doc. 56-2 (Head Deposition), pp. 64–69, 85; Doc. 56-4 (License Affiliations); 2) evidence that HBIG, a Missouri LLC, had sold insurance to an Allstate customer with an effective date of August 15, 2017, Doc. 56-6 (Lange Deposition), p. 49–50; Doc. 56-7 (Anderson Insurance Card); and 3) Mr. Swartz's affidavit stating his agency lost approximately 16 customers that were previously serviced by HBA, Doc. 56-8 (Swartz Affidavit), ¶ 17.

The Court cannot say as a matter of law that this evidence establishes that Mr. Head violated the non-solicitation clause. At best, an inference of solicitation can be made. Thus, summary judgment on this issue is denied.

    B. <u>Trade Misappropriation</u>

To prove trade misappropriation under the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1832 *et seq.*, and the Missouri Uniform Trade Secrets Act (MUTSA), Mo. Rev. St. § 417.450 *et seq.*, Allstate must show 1) that a protectable trade secret exists; 2) Mr. Head misappropriated that trade secret; and 3) damages. *Phyllis Schlafly Revocable Tr. v. Cori*, No. 16-01631, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016) (discussing the elements under DTSA and MUTSA); *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo.

2014) (listing elements under MUTSA).  The Parties agree that the information shared by Allstate is a trade secret under both DTSA and MUTSA.  Doc. 1 (Verified Complant), ¶¶ 90, 102, 103; Doc. 39 (Answer), ¶¶ 90, 102, 103.[2]  As with the breach of contract claim, Allstate preserves the issue of damages for trial.

"A misappropriation occurs when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent."  *Roeslein & Assocs., Inc. v. Elgin*, No. 17-1351, 2018 WL 1138465, at *8 (E.D. Mo. Mar. 2, 2018) (misappropriation under DTSA); *accord Signalpoint*, 422 S.W.3d at 321 (misappropriation under MUTSA).  Thus, to prove misappropriation, Allstate must prove either acquisition through improper means, or use or disclosure without consent.

Mr. Head had Allstate's consent to use Allstate's trade secrets for the limited purpose of "assisting [HBA] in performing services under the agency agreement."  Doc. 56-1 (Appendix A) at ¶ 4.  As with the contract claim based on the alleged misuse of confidential information, Allstate may have established facts sufficient for a reasonable jury to infer that Mr. Head used Allstate's trade secrets for other purposes.  However, this is insufficient to establish as a matter of law that this did occur.

---

[2] Allstate's petition asserts that Mr. Head had access information in paragraphs 87 and 102. Although Mr. Head denied paragraph 87, he admitted paragraph 102.  Similarly, Allstate's petition asserted the information constitutes a trade secret in paragraphs 90 and 104.  Mr. Head denied paragraph 104, but admitted 90.  The Court reads these admissions together.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion for partial summary judgment, Doc. 55, is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 19, 2018
Jefferson City, Missouri